```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF GEORGIA
                      ATLANTA DIVISION

UNITED STATES OF AMERICA        :
                                :    CRIMINAL ACTION
     v.                         :
                                :    NO: 1:00-CR-859-RWS-ECS
KEVIN JERARD CONARD             :    NO: 1:11-CR-099-RWS-ECS
a/k/a JABRIL BATTLE             :
```

**REPORT AND RECOMMENDATION**
**OF THE MAGISTRATE JUDGE**

This matter is before the Court on motions to suppress searches and statements in two cases based upon the same set of factual circumstances. The motions came on for hearing before the undersigned on May 18, 2011. The transcript was prepared and briefing completed thereafter.[1] The motions became ripe for decision after the filing of Defendant's reply briefs. For the reasons explained below, the Court **RECOMMENDS** that the motions [Doc. 21, 22] in CA No. 1:00-CR-859, and [Doc. 9] in CA No. 1:11-CR-99 be **DENIED**.

**I.**
**Procedural Background**

Defendant is charged in Count One of CA No. 1:00-CR-859 with conspiracy to commit mortgage, bank, mail and wire fraud in violation of 18 U.S.C. §§ 1341, 1343, 1344, and 42 U.S.C. § 408(a)(7)(B). In Counts Two through Ten, he is charged with fraudulent use of false Social Security numbers in violation of 42

---

[1] The transcript is docketed at [Doc. 30]. References to the transcript will be made as follows: (T. - page).

AO 72A
(Rev.8/82)

U.S.C. § 408. In Counts Eleven through Nineteen, he is charged with wire fraud in violation of 18 U.S.C. § 1343, and, in Counts Twenty through Twenty-Four, with bank fraud under 18 U.S.C. § 1344. In CA No. 1:11-CR-99, Defendant is charged with one count of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2). Both cases have been declared complex. See [Doc. 17] in 1:00-CR-859, and [Doc. 23] in 1:11-CR-99.

The motion to suppress initially sought to suppress all evidence seized on November 9 and 10, 2010, from inside and outside certain residence premises located at 134 Panola Road, and from two vehicles impounded by the police on the evening of November 9, 2010, also outside the same premises. See [Doc. 22] in 1:00-CR-859, and [Doc. 9] in 1:11-CR-99. Defendant also moved to suppress any statements made by Defendant when he was encountered by police and arrested on November 9 at the subject premises for trespass, obstruction of an officer, and carrying a concealed weapon. Id.

At the evidentiary hearing, Defendant conceded that he lacked standing to complain about the seizures of property from inside the residence on November 9. (T. 25). The issues were narrowed further when Defendant filed his post-hearing brief which abandoned, by failing to address or argue, any claim to suppression of evidence obtained on November 9, 2010, from within the residence, from the two cars, or from the exterior of the subject premises. See [Doc.

34 in 1:00-CR-859, and Doc. 18 in 1:11-CR-99]. His arguments for suppression are thus limited to the seizure of the items from the exterior of the premises by Officer Lemacks of the Henry County Police Department *on November 10*, the day *after* Defendant had been arrested.[2] As for his motion to suppress statements, Defendant likewise abandoned these motions by failing to make any arguments in his brief with regard to the statements. Id.

## II.
## Factual Background

The background of this matter leading up to the notice of eviction and the execution of the writ of possession at the premises at 134 Panola Road are set forth in detail in the government's response to the motions to suppress and stated on the record by counsel for the government at the commencement of the evidentiary hearing. See Gov't Brief at 7-8 [Doc. 36];(T. 7-10). Suffice it to say that proper notice was given and procedure followed leading to the scheduled eviction at the premises address. Defendant has made no challenge to the procedures followed by the Henry County Sheriff's Department in executing the writ of possession.

---

[2] The penultimate statement of Defendant's post-hearing brief reads as follows: "Wherefore, the Defendant asks his Motion to Suppress be granted and *the November 10, 2010*, illegal search and seizure of his possessions be suppressed." (Emphasis added);[Doc. 34]. See also [Doc. 38].

3

The unchallenged proffer by the government, supported by exhibits admitted at the hearing, shows that the sheriff's deputies first entered the premises on November 9, 2010, to do a protective sweep for any potential danger before the movers came in to clear the residence of property. No occupants, or anyone else with any claim or interest in the premises, including Defendant, were present while this occurred. While executing their protective sweep, the deputies seized certain identification documents in plain view that appeared to be fraudulent. The deputies also removed weapons and weapon-related items like knives, a cross bow, arrows, ammunition, body armor, and other law enforcement and military-type equipment. See Gov't Ex. 39; Gov't Brief at 8].

After the deputies completed their sweep, the movers came in to "set out" the remaining contents of the house into the yard. Deputies then looked through the items deposited outside and seized additional items, including credit and debit cards in different names that appeared to be fraudulent. After the property was removed and set out in the yard, the locks on the house were changed and a copy of the writ posted on the front door in blue tape. See Id.

At the evidentiary hearing, when called upon to establish a basis for Defendant standing, Defendant offered no evidence to dispute the government's proffer of the facts relating to the

4

execution of the Writ and the dispossession, nor did he argue in his briefs that he had standing as to anything but the search that occurred on November 10, 2010. (T. 36-37); see Def's Brief at 4 [Doc. 34] in 1:00-CR-859; Def's Brief at 4, [Doc. 18] in 1:11-CR-99.

Defendant does contend that he had standing to challenge the search and seizure of items from the property that occurred on November 10, 2010, by Officer David Lemacks of the Henry County Police Department. The facts leading to this search and seizure were presented through the testimony of Sergeant Richard Fowler and Officer Lemacks. This testimony showed that Sergeant Fowler was advised on November 9, 2010, that the eviction/dispossessory had occurred at the premises on Panola Road and that obviously fake identification had been found along with ammunition and other documents that referred to sovereign citizens of the "Moorish American National Government." See Gov. Ex. 49; (T. 6). He and Officer David Lemacks decided to go to the premises to investigate. (T. 63).

Upon arrival at around 8:30 p.m., the officers found two vehicles parked in the drive outside the house and saw two males in the area of the garage. (T. 44, 72). The front door was standing open, as was an interior door from the garage. (T. 44). It appeared that items were being loaded up from the yard or the house. (T. 45). The officers approached and identified themselves and

5

asked for identification from the men.  The men finally gave the officers first names, but no last names.  Defendant identified himself as "Gebrael," and acknowledged that the vehicles were his and that he was there "Getting his stuff." (T. 45-47, 75).

Sergeant Fowler asked if the men were in possession of any guns and Defendant indicated that he had one and began to reach for it. (T. 48, 76, 86).  This naturally alarmed the officers, who pulled their weapons and quickly put Defendant and his companion on the ground in handcuffs, removing a loaded .45 caliber handgun from a concealed holster in Defendant's waistband. (T. 48).  Fowler asked Defendant if he had a permit for the pistol but got no response. (T. 49).  At this point Defendant and his companion, later identified as Andrew Conard, were under arrest for trespass, obstruction of an officer, and possession of a concealed weapon. (T. 50, 55).  Since the officers had not been given a valid name or birth date for either of the men, they were unaware that Defendant was a convicted felon.  Once under arrest, the Defendant and his companion were taken to jail.

Pursuant to police policy and procedure, the two vehicles were impounded and an inventory made of their contents on the scene. (T. 57, 78).  The search of the vehicles notably turned up an AK 47 rifle in the trunk, fully loaded, with a number of extra magazines for the rifle and a .45 caliber pistol, and multiple apparently

6

fraudulent credit cards. (T. 51-52, 78-79). Defendant had a copy of the writ of possession and dispossessory order with notes on the back in his pocket. (T. 53). The weaponry and ammunition were taken into custody for safekeeping. (T. 55).

Officer Lemacks went back to the scene the next day to investigate further, in particular to look for any additional ammunition that should be seized. (T. 81-82). Among other things, Lemacks found a bayonet for an AK 47, a laser sighting system, a tactical rifle scope, a tactical vest that would hold multiple assault rifle magazines, and a box of shotgun shells. (T. 82-83). Also the next day, the fingerprints identified Defendant as a convicted felon and showed that he was wanted on the outstanding federal indictment in this mortgage fraud case. (T. 69).

### III.
### Discussion

Only a 'person aggrieved' by an unlawful search and seizure may move to suppress seized property. Fed. R. Crim. P. 41(g)&(h). In order to qualify as a person aggrieved under the Fourth Amendment, "a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable . . . ." Minnesota v. Carter, 525 U.S. 83, 88, 119 S.Ct. 469, 472 (1998); United States v. Chaves, 169 F.3d 687, 690 (11th Cir. 1999). Defendant argues that Defendant retained a reasonable expectation of privacy in his possessions in the yard on November 9

7

and 10 and that Officer Lemacks knew that Defendant had not abandoned his interest in the property, "since he had seen the Defendant and his brother attempt to pack up and reclaim the property the night before." Def's Brief at 3. Therefore, "Officer Lemacks should have gotten a warrant." Id.

The Court does not agree. When the sheriff's deputies and the movers removed all of the personal property from the house and deposited it in the yard pursuant to the writ of possession, the property was deemed abandoned under Georgia law. O.C.G.A. § 44-7-55(c) provides that a writ of possession authorizes the removal of the tenant or his or her property from the premises and permits the placement of any personal property "on some portion of the landlord's property or on other property as may be designated by the landlord and as may be approved by the executing officer . . . ." Section 44-7-55(c) further provides that "[a]fter execution of the writ [of possession], such property shall be regarded as abandoned. See generally Washington v. Harrison, 299 Ga. App. 335, 338-39, 682 S.E.2d 679, 682-83 (2009).

But in this case, even if the law did not declare the property abandoned, once the property was in fact removed from the house and placed outside in an area accessible to the public, Defendant could not have had any reasonable expectation of privacy in that property. Defendant argues that the fact that Defendant and his brother

8

appeared that night and were attempting to "get their stuff" somehow re-establishes Defendant's privacy interest sufficient to require the police to obtain a warrant for a further look at the property that was still outside in the yard. But the fact is that Defendant never took sufficient possession or control of the property to warrant any reasonable privacy expectation. The property at all pertinent times was unprotected, outside, open to view from the street in the yard of an unoccupied house, and therefore subject to being searched through or taken away by anyone who came along.

Nothing Defendant had done up until he was arrested had re-established any reasonable expectation of privacy in the property he may have previously had, if he in fact ever had any interest in the property. He failed to identify himself to the officers when they asked for identification; he asserted no legal basis for his claim to the property; the real property foreclosed upon by the bank had not been in his legal name; there is no evidence of a lease; he did not take the witness stand to even state under oath that the personal property in the yard belonged to him. All there is on the record is his statement that he was there to get his stuff. That is not enough. As Officer Lemacks aptly put it, "They [Defendant and his brother] could have just been people rummaging through some property of somebody that got evicted." (T.90).

Defendant has the burden of showing that he had a reasonable expectation of privacy in the property sufficient for him to invoke his Fourth Amendment right to protection against unreasonable searches and seizures. <u>Rawlings v. Kentucky</u>, 448 U.S. 98 (1980); <u>Alderman v. United States</u>, 394 U.S. 165 (1969); <u>United States v. Cooper</u>, 133 F.3d 1394, 1398 (11th Cir. 1998)(citing <u>United States v. Eyster</u>, 948 F.2d 1196, 1209 (11th Cir. 1991)). He has failed to carry this burden in this case and therefore lacks standing to challenge Officer Lemacks' further examination of the abandoned property in the yard at 134 Panola Road on November 10, 2010. The motions to suppress evidence and statements, therefore, for the reasons stated should be **DENIED** *in toto*.

## IV.
## RECOMMENDATION

For the foregoing reasons, **IT IS RECOMMENDED** that the motions to suppress in both cases, [Doc. 21, 22] in 1:00-CR-859, and [Doc. 9] in 1:11-CR-99, be **DENIED**. In addition, it appearing that there are no further pretrial or discovery matters to bring before the undersigned, it is therefore **ORDERED** that these cases be and are hereby **CERTIFIED** as ready for trial.

**SO REPORTED AND RECOMMENDED**, this 5th day of October, 2011.

10

*S/ E. Clayton Scofield III*
E. Clayton Scofield III
UNITED STATES MAGISTRATE JUDGE